# John C. Whitla *v.* John C. Moore and A. Seaton, Appellants.

*Contract—Breach of contract—Forfeit money—Waiver.*

Plaintiff covenanted to sell to defendants " ten thousand dollars of his present stock of goods, etc., and deliver possession of the same between the first and fifteenth of March, 1893," and defendants agreed " to purchase the same at the cost price thereof, and pay for the same in cash." Plaintiff further agreed that, between the execution of the agreement and the fifteenth of March, he would " reduce the stock of goods now in hand so that the value of the same shall not exceed the sum of ten thousand dollars." Each of the parties agreed to deposit a certified check for one thousand dollars in a bank, " and in case either party should fail to carry out faithfully the agreements and covenants to be by them or him kept

and performed," the other party should receive " said sum of one thousand dollars," so deposited by the defaulting party.    There was some delay in the delivery of the goods, but all parties agreed to waive the delay and abide by the contract.    An invoice of the goods was then made, and it was found the stock in hand amounted to more than $14,000.    Plaintiff offered to take out of the stock at cost price the excess of the goods over ten thousand dollars or to sell the excess to defendants, if they desired to purchase it.    Defendants then declared the contract off on the ground that plaintiff had failed to reduce his stock.    *Held*, that defendants were not entitled to rescind the contract, and that plaintiff was entitled to the forfeit money.

Argued Oct. 9, 1894.    Appeal, No. 182, Oct. T., 1894, by defendants, from judgment of C. P. Mercer Co., June T., 1893, No. 50, on verdict for plaintiff.    Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ.    Affirmed.

Feigned issue to determine ownership of certified check.    Before GREER, P. J., specially presiding.

The facts appear by the opinion of the Supreme Court.

The court charged in part as follows :

" The next question is that these goods were not reduced to the specified amount by the 15th of March.    Well, gentlemen of the jury, so far as that is concerned I would say that there cannot be much merit in that; but if there was it was Mr. Moore's place to not take that invoice and not to agree to take the goods as he did on the 16th.    He admits that he had consulted with Mr. Seaton, and that he and Mr. Seaton told him on the 16th of March that they would take the goods according to the agreement; and you must believe the defendant's declarations against themselves; and when they make those declarations they prove to you that they accepted the goods on the 16th of March; and therefore the only question, and the only thing for you to do, gentlemen of the jury, as this case now stands, is to return a verdict for the plaintiff.    I need not say the amount." [3]

Plaintiffs presented this point among others :

" 4. That under the evidence in the case the plaintiff is entitled to recover.    *Answer :* We affirm that point and say that from the proof in this case it is your duty to return a verdict for the plaintiff in this case.    You will not give the amount, because the amount is fixed." [1]

Defendant presented this point among others:

" 3. That the covenant of the plaintiff to reduce his stock of goods and fixtures to at least ten thousand dollars by March 15, 1893, as contained in the written agreement, was vital to the contract in this case, and the time named within which the reduction was to be made was of the essence of the contract, and the failure of the plaintiff to so reduce his said stock within the time fixed absolved the other parties from their obligation to take the goods, and the plaintiff cannot recover. *Answer :* Gentlemen of the jury, we refuse this point. If these goods had not been reduced by the 15th of March, and if Mr. Whitla had not agreed to reduce them (had not reduced them according to his agreement) by either a sale or by a withdrawal of that amount and putting that amount down so that Mr. Moore and Mr. Seaton could reach it, Mr. Seaton on the 15th, or before that time, or Mr. Moore, could have withdrawn and might have collected the check that Mr. Whitla put up; but when Mr. Moore and Mr. Seaton went to the store on the 16th, the day after the 15th, and agreed that there would be no more boy's play, but that they would go on and take the invoice of the goods and take the store, then they waived all that in regard to time. Had they not done so, this point we would have had to affirm. But as the proof, the admissions of Mr. Moore and Mr. Seaton both show that they agreed on the 16th, after this time was out, to go on and accept and take the store, then we say they are too late now in coming in with that objection ; and we overrule this point, or refuse it." [2]

Verdict and judgment for plaintiff. Defendants appealed.

*Errors assigned* were (1–3) instructions, quoting them.

Q. A. *Gordon*, S. H. *Miller* with him, for appellants, cited : Jones v. United States, 96 U. S. 24 ; Hare on Contracts, 295 ; Smoot's Case, 15 Wall. 36 ; Zuck v. McClure, 98 Pa. 541.

W. H. S. *Thompson*, Samuel B. *Griffith*, W. W. *Moore* and J. A. *Martin* with him, for appellee.

OPINION BY MR. CHIEF JUSTICE STERRETT, Oct. 22, 1894 : In an action of assumpsit brought by the First National

Bank of Beaver Falls against the First National Bank of Mercer, by consent of all parties John C. Whitla, above named, was allowed to intervene, as plaintiff, and John C. Moore and A. Seaton, as defendants; and this issue was thus awarded to determine said plaintiff's right to the certificate of deposit in controversy. In granting the issue, it was provided that the articles of agreement of January 19, 1893, between the parties, together with plaintiff's averment of a breach thereof by the defendants, should stand as a declaration, etc.

The substance of said agreement was, that plaintiff covenanted to sell to defendants "ten thousand dollars of his present stock of goods, store and shop fixtures, and deliver possession of the same between the first and fifteenth of March 1893," and defendants agreed "to purchase the same at the cost price thereof and pay for the same in cash upon the day of the delivery thereof to them between the first and fifteenth days of March 1893," less "a discount of 12½ per cent." Plaintiff further agreed that, between execution of the agreement and said 15th of March, he would "reduce the stock of goods now in hand so that the value of the same shall not exceed the sum of ten thousand dollars." He further bound himself to "not engage in the clothing business in the borough of Beaver Falls for the period of five years from the first day of April 1893," and to transfer to defendants the lease he then held of the store building occupied by him. Each of the parties agreed to deposit a certified check for $1,000, in the First National Bank of Beaver Falls, "and in case either party should fail to carry out faithfully the agreements and covenants to be by them or him kept and performed," the other party should receive "said sum of one thousand dollars," so deposited by the defaulting party.

The only evidence, tending to show any modification or waiver of the terms of said agreement, was to the effect that, owing to some misunderstanding between the parties, the goods were not delivered or paid for on or before the 15th of March, 1893, but the undisputed evidence is, as stated by the defendants in their history of the case, that "it was agreed by all parties to drop all disputes and abide by the written contract. When this conclusion was reached, A. Seaton, one of the defendants, left Beaver Falls and arranged for the cash to pay

for the goods, and John C. Moore, the other defendant, remained to assist in making an invoice. On Thursday, March 16th, at noon, the store was closed and an invoice was taken, which was completed on Saturday, March 18th. This invoice showed that the goods and fixtures then in the store amounted to $14,276.26." When this result was reached plaintiff proposed to then and there take out the excess of goods over the $10,000 worth contracted for. He also proposed that, if defendants desired to purchase the excess of stock, he would take their note or notes therefor. No question was then raised by defendant, Moore, in regard to the $10,000 worth of goods, but desiring to consult his associate, Mr. Seaton, he started for Mercer, leaving Mr. Miller in charge of the store to receive for them the proceeds of the day's sales. On Monday morning defendants wired plaintiff from Mercer, saying: "Can't accept your proposition. We decline to take the goods. Have written you." In that letter, of same date, they say: "In as much as you have failed to reduce your stock of goods according to our contract, and the other plans for its reduction, suggested by you, are wholly unsatisfactory to us, under the circumstances we cannot take the goods. Please consider the contract off and direct the bank to return to us our certificate of deposit for $1,000." This was the end of negotiation; and shortly afterwards the suit, in which this issue was awarded, was brought.

In view of the uncontradicted evidence, showing that plaintiff was ready and willing to perform his part of the contract and that defendants refused to perform theirs, the learned judge who presided at the trial directed a verdict for plaintiff. This binding instruction is contained in his answer to plaintiff's fourth point, and constitutes the first specification of error. The second specification charges error in the court's answer to defendants' third point, recited therein, and the remaining specification complains of part of the charge therein recited.

Considering these in their inverse order, we are unable to discover any sufficient ground for sustaining the third specification.

Whatever may have occurred between the parties prior to March 16, 1893, it is undoubtedly true, as admitted by defendants themselves, that, on that day, " it was agreed by all par

ties to drop all disputes and abide by the written contract."
One of the defendants thereupon went to Mercer "and ar-
ranged for the cash to pay for the goods;" the other remained
and assisted in making the invoice, which was completed on
Saturday, March 18th. The footing of the invoice disclosed
the fact that there were more goods on hand than were re-
quired to fill the contract, and the plaintiff promptly offered
to take out goods sufficient, at cost, to reduce the stock, etc.,
to be delivered to defendants, to the amount named in the con-
tract; or, if defendants preferred, he proposed to let them have
the excess on credit. Conceding, for sake of argument, that
delivery, within the period specified in the agreement, was of
the essence of the contract, strict performance, in that regard,
had been waived and the parties had mutually agreed "to drop
all disputes and abide by the written contract." On the foot-
ing of that waiver and agreement the invoice had been taken,
with a result unexpected by both parties—an excess of goods,
in value. The obvious remedy for that was then—as it had
been before—in the exclusive control of plaintiff, and he pro-
posed to then and there apply it, by laying aside a sufficient
amount to reduce the invoice to $10,000. He had agreed to
reduce the stock to that sum; but no mode of doing so was
prescribed by the agreement. The defendants were in no way
concerned in the excess, unless they concluded to accept plain-
tiff's proposition to buy the same on credit. They had agreed
to buy and pay cash for $10,000 worth of the stock, and plain-
tiff was bound to deliver to them that amount, neither more
nor less. Reduction of the stock to that amount was plain-
tiff's—not defendants'—affair; and he stood ready and willing
to effect the reduction in a proper manner, waiting only to give
defendants an opportunity to consider his proposition to sell
them the excess on time. After conferring on the subject, de-
fendants declined to accept that proposition, and, planting them-
selves upon plaintiff's failure "to reduce your stock of goods
according to our contract," declared "the contract off," and
requested plaintiff to direct the bank to return to them their
certificate of deposit for $1,000. Their telegram and letter of
March 20, 1893, to plaintiff clearly define their position. That
position is too narrow and untenable to form the basis of even
a plausible excuse, much less a successful legal defence. It was

evidently an afterthought, born of a desire to repudiate their contract. We think, therefore, that the learned judge committed no error in charging as he did.

It is unnecessary to discuss the questions involved in the remaining specifications. They are so closely connected with the one we have just considered that further comment is not required. It follows from what has been said that there is no substantial error in either of said specifications.

Judgment affirmed.